## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1793 | **DATE** | 6/12/2001 |
| **CASE TITLE** | Lawson Products, Inc. etc. et al. Vs. Chromate Industrial Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss is denied. Status hearing set for June 21, 2001 at 9:45am.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 13 2001 | |
| | Notified counsel by telephone. | | date docketed | 60 |
| ✓ | Docketing to mail notices. | | 15 | |
| | Mail A 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 JUN 12 PM 2:56 | | |
| WAH | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LAWSON PRODUCTS, INC., a Delaware corporation, and PREMIER FARNELL, LLC, a Delaware Limited Liability Company,

Plaintiffs,

vs.   No. 01 C 1793

CHROMATE INDUSTRIAL CORPORATION, a New York corporation,

Defendant.

DOCKETED
JUN 1 3 2001

## MEMORANDUM OPINION AND ORDER

This case involves a dispute between competitors in the maintenance repair operations (MRO) industry over salesperson poaching. Plaintiffs Lawson Products, Inc. (Lawson) and Premier Farnell LLC (Premier) have alleged that defendant Chromate Industrial Corporation (Chromate) has gained access to confidential information and trade secrets by hiring away several Premier salespeople. Their complaint states nine counts: (1) violation of Premier's trade secrets; (2) violation of Lawson's trade secrets; (3) tortious interference with Premier's employee contracts; (4) tortious interference with Lawson's employee contracts; (5) tortious interference with an asset purchase agreement; (6) interference with prospective economic advantage; (7) conspiracy; (8) injunctive relief; and (9) accounting. Chromate now moves to dismiss the complaint in its entirety for failure to state a claim and based on collateral estoppel. For the following reasons, defendant's motion is denied.



## BACKGROUND

The parties sell and distribute hardware, fasteners, chemicals, electrical repair products and related items to industrial clients. The products are typically fungible, so customer loyalty depends more on the relationship with an individual salesperson than on brand name.

Premier signed written employment contracts with all of its sales personnel,[1] who were full-time employees. These contracts included restrictive covenants limiting the employees' ability to work for Premier's competitors and prohibiting them from disclosing Premier's confidential information and trade secrets. Customer lists and goodwill were Premier's primary assets as a going concern.

Lawson recently acquired Premier. They signed an asset purchase agreement in January 2001, and closed the deal in April. Lawson offered to retain Premier's entire sales force, as independent sales agents, upon completion of the deal. Some accepted, and some did not. Those who did signed written contracts with Lawson, including similar competition restrictions and confidentiality requirements.

Chromate solicited many of the soon-to-be-former Premier salespeople with job offers, including signing bonuses and guaranteed compensation. Defendant also represented to these salespeople that they were not bound by their confidentiality promises to plaintiffs and that Chromate would indemnify them in any legal action. Chromate eventually hired several of them, also as independent sales agents. These salespeople continue servicing their existing customers, only now selling Chromate products.

Chromate and Premier have been involved in similar employee poaching disputes many

---

[1] The employees in question include both sales representatives and sales managers. Although they surely had varying responsibilities, we refer to them collectively as salespeople.

times over the past fifteen years or so. One of these cases resulted in a 1988 agreement to a prescribed mechanism for resolving future disputes between the two companies. There are currently proceedings in Florida state court pursuant to that agreement. Accordingly, we have stayed all action here related to Premier and Premier's employee contracts.[2] In this opinion we only address Lawson's claims based on the ten or so salespeople who signed agreements with Lawson and then switched to Chromate.

## DISCUSSION

### I. Collateral Estoppel

Defendant first argues that collateral estoppel bars the present claim. Lawson was involved in a similar dispute some fifteen years ago. *See* Lawson Products, Inc. v. Avnet, Inc. (Lawson I), 782 F.2d 1429 (7th Cir. 1986). It sought a preliminary injunction against a competitor who had hired several Lawson employees. The court, however, found that the information in question was not a trade secret under Illinois law. For this reason, among others, the court denied the preliminary injunction. *Id.* at 1441. If Lawson's information did not qualify as trade secrets then, defendant reasons, it may not relitigate that issue again now.

Once a party has litigated an issue and lost, the question is settled and it may not do so again. "We generally will not allow a second bite at a single apple." A.J. Canfield Co. v. Vess Beverages, Inc., 859 F.2d 36, 37 (7th Cir. 1988). The party claiming estoppel bears the burden to prove that

> (1) the party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the

---

[2] This includes counts I (Premier trade secrets), III (Premier employee agreements) and V (asset purchase agreement) in their entirety. Although Lawson is the nominal plaintiff in count V, the asset with which defendant allegedly interfered – Premier's information – is part of the Florida proceedings.

resolution of the particular issue was necessary to the result; and (4) the issues are identical.

Kunzelman v. Thompson, 799 F.2d 1172, 1176 (7th Cir. 1986).

We focus on the last element, identical issues, which proves dispositive. The legal issue presented here, whether the information in question qualifies for trade secret protection, is the same. But contrary to Chromate's assertion, Lawson I did not hold that the MRO industry as a whole does not, as a matter of law, have any trade secrets. The trial judge simply applied the Illinois trade secret law to the specific information allegedly misappropriated, and found it unprotected. Nor did the Seventh Circuit make any broad pronouncement. It merely held that the trial judge had not abused his discretion. Lawson I, 782 F.2d at 1441. The facts here, although similar, are still distinct. The Lawson I agents did not have formal confidentiality arrangements with the company. Here Lawson included confidentiality clauses in its employment contracts. The complaint also alleges that the agents had access to certain corporate strategy information. These differences may or may not prove outcome determinative, but they certainly make estoppel inappropriate. Lawson is free to argue that this information is protected, even if the information in Lawson I was not.

## II. Failure to State a Claim

When deciding a Rule 12(b)(6) motion, we must assume the truth of all well-pleaded factual allegations, making all possible inferences in the plaintiff's favor. Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund, 25 F.3d 417, 420 (7th Cir. 1994). We will dismiss a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Fed.R.Civ.P. 8(a)(2) only requires "a short and plain statement of the claim showing that the

pleader is entitled to relief." Generally, "mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." Strauss v. City of Chicago, 760 F.2d 765, 767 (7th Cir. 1985).

Defendant's motion to dismiss attacks four substantive claims: trade secrets, interference with employment contracts, interference with the asset purchase agreement and interference with economic advantage.[3] Because the latter three claims all depend on whether the information in question qualifies for trade secret protection, this allegation is the central question.

A. Trade Secrets (count II)

To state a claim for misappropriation of a trade secret, the complaint must allege that information was (1) a trade secret, (2) misappropriated and (3) used by defendant. Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1265-66 (7th Cir. 1992). The complaint alleges that Chromate gained access to Premier and Lawson information by hiring former Premier salespeople, and is using this information to solicit Premier customers on behalf of Chromate. This satisfies the second and third elements. The motion to dismiss primarily attacks the first, whether this information qualifies as trade secrets.

The Illinois Trade Secrets Act[4] defines a trade secret as information "that (1) is sufficiently secret to derive economic value, actual or potential, from not being generally

---

[3] There are actually two parallel trade secret and interference with employment contract claims, one on behalf of each plaintiff. Again, we do not address the claims implicating the Florida proceedings (counts I, III and V) at this time. The remaining claims – conspiracy, injunctive relief and accounting – are all predicated on the four substantive counts.

[4] There is some debate over which law governs. At various points the parties have proffered Illinois, New York and Ohio law, although neither has briefed this issue in any depth. We will be better equipped to resolve this question once a factual record has been developed, and we need not resolve it at the motion to dismiss stage. For present purposes, we use the Illinois statute to demonstrate the complaint's adequacy.

known to other persons who can obtain economic value from its disclosure or use and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS § 1065/2(d). Illinois courts typically consider six factors in applying the statute:

> (1) the extent to which the information is known outside the employer's business; (2) the extent to which it is known to employees and others involved in the employer's business; (3) the extent of the measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and its competitors; (5) the money or effort expended by the employer in developing the information; and (6) the ease or difficulty with which others might properly acquire or duplicate the information.

Quality Lighting, Inc. v. Benjamin, 592 N.E.2d 377, 383 (Ill. App. 1st Dist. 1992).

The motion to dismiss makes two main arguments: (1) this type of customer information, as a matter of law, is not protected; and (2) plaintiffs did not treat the information as secret. Beginning with the first point, for every case defendant cites where a court found certain information unprotected, plaintiffs cite another reaching the opposite result. The criteria described above are too fact dependent to permit such a blanket statement. The complaint alleges that the information in question includes not only customer and price lists, but also ordering patterns and preferences, sales projections and marketing strategies (cplt. ¶14). If proven, this type of information may be protected. A competitor could not necessarily learn all this by "flipping through the yellow pages" or "standing in a repair bay and seeing what is on the shelf" (def. br. at 23). The complaint is not particularly specific in describing the allegedly appropriated information, but under federal pleading standards it does not have to be. *See* Fed.R.Civ.P. 8(a)(2). The complaint suffices to put Chromate on notice as to the nature of the claim. Only after fleshing out these facts will we be able to

determine whether this specific information is too readily available or too easily duplicated to qualify as trade secrets.[5] Given the nature of this industry, as a matter of fact, plaintiffs bear a very difficult burden in trying to establish trade secrets. As a matter of law, however, we cannot resolve this question on the pleadings. Chromate's contention that the information is not protected is premature.

Defendant's second argument, regarding efforts to keep the information secret, suffers the same defect. The complaint alleges that information only was disseminated to certain employees, not everyone within the company (cplt. ¶16). It does not specify what information is provided, to whom, or for what purpose. We will only be able to evaluate whether it is too widely disseminated once these facts are developed. *See* Quality Lighting, 592 N.E.2d at 384. The confidentiality clauses in both Premier's and Lawson's contracts with their salespeople are certainly consistent with reasonable efforts to maintain secrecy, and these allegations are sufficient to survive a motion to dismiss.

## B. Interference with Employment Contracts (count IV)

To state a claim for tortious interference with a contract, the complaint must allege "(1) the existence of a valid and enforceable contract between plaintiff and another; (2) defendant's awareness of the contractual obligation; (3) defendant's intentional and unjustified inducement of a breach of contract; (4) a subsequent breach by the other caused by defendant's wrongful conduct; and (5) damages." Indeck North American Power Fund, L.P. v. Norweb plc, 735 N.E.2d 649, 661 (Ill. App. 1st Dist. 2000). Following the acquisition

---

[5] Many of Chromate's related arguments about the nature of the information are really factual disputes. For example, defendant challenges how much training Premier provided its sales representatives. *Compare* cplt. ¶14 ("regular and periodic instruction") with def. br. at 23 ("little or no training or support"). On a motion to dismiss we must accept plaintiff's version of the facts.

Lawson signed the salespeople in question to contracts. Plaintiffs have alleged that defendant offered these salespeople financial incentives to join Chromate, and that these former Premier employees are now using confidential information to solicit Premier customers on behalf of their new employer. Lawson's contracts with the salespeople included provisions prohibiting disclosure of certain information.

Defendant focuses its attack on the first element, asserting that the restrictive covenants in the employment contracts were not enforceable for multiple reasons.[6] Most of these arguments suffer the same flaw. They contest the merits rather than the pleadings. We will not assess the merits at this stage of the litigation.

Chromate's first argument is that these provisions were unenforceable because the information was not protected. Although Illinois views some restrictive covenants suspiciously as restraints on trade, it will enforce them to protect trade secrets. Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc., 685 N.E.2d 434, 443 (Ill. App. 2d Dist. 1997). As we discussed above, the complaint sufficiently pled that the information constituted trade secrets to withstand a motion to dismiss. Accordingly, we find it adequately alleged an enforceable contract. If this information was protected and has been disclosed, that would constitute a breach.

Chromate next contends Lawson's agreements contained insufficient consideration, were overbroad and were unfair to the sales agents. These arguments all go to the merits.[7]

---

[6] Defendant also raised several additional arguments, such as assignability of restrictive covenants, that only apply to the Premier contracts. Because we have stayed matters involving Premier pending the Florida proceedings, we do not address them now.

[7] We note that as a matter of policy Illinois courts are much more willing to scrutinize consideration in a restrictive covenant context. See, e.g., Mid-Town Petroleum, Inc. v. Gowen, 611 N.E.2d 1221, 1227 (Ill.App. 1st Dist. 1993). If the salespeople never began working for Lawson, and did not learn any

They require the court to assess the restrictions' reasonableness, an inherently fact-based determination that is not appropriate at this state of the litigation.

C. <u>Interference with Economic Advantage (count VI)</u>

To state a claim for interference with prospective economic advantage, plaintiffs must allege: (1) a reasonable expectancy of a valid business relationship with a third party; (2) defendant's knowledge of the prospective business relationship; (3) intentional interference; and (4) damage. <u>Dowd & Dowd, Ltd. v. Gleason</u>, 693 N.E.2d 358, 370 (Ill. 1998). Business rivals may assert an affirmative defense of competitor's privilege. But this does not excuse bad faith or malicious action. *See* <u>Candalaus Chicago, Inc. v Evans Mill Supply Co.</u>, 366 N.E.2d 319, 326-27 (Ill.App. 1st Dist. 1977), *citing* Restatement of Torts § 768.

Lawson asserts that, upon acquisition of Premier, it expected to continue servicing Premier's customers. This is an expected business relationship. We found above that the complaint sufficiently alleges that Chromate knew of Lawson's plan to acquire Premier. Based on defendant's own characterization of the industry and customers' relations with their salesperson, it certainly realized Lawson expected to continue serving Premier's customers and would need to retain Premier's sales force to do so. Sending former Premier salespeople to convert those customers to Chromate products could constitute intentional interference. The loss of these customers constitutes harm. The complaint need not provide specific names of customers or amount of business lost. It describes the nature of the harm, which is sufficient to state damages. As for the competitor's privilege, using wrongfully obtained confidential information, and making misrepresentations to the salespeople about their confidentiality

---

confidential Lawson information, those facts would of course affect our eventual weighing of the merits.

obligations to their former employers, arguably demonstrates bad faith. Chromate's arguments all question the reasonableness of Lawson's expectation. Once again, this goes to the merits, not the pleadings.

## CONCLUSION

Because we have upheld the predicate claims, we also allow the conspiracy, injunctive relief and accounting allegations to stand. Plaintiff's claims may well founder at the summary judgment stage, but here we necessarily are restricted to reviewing the allegations. Defendant's motion to dismiss is denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

June 12, 2001.